IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04cv110

| | |
|---|---|
| SANG U. KIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) SECOND MEMORANDUM AND |
| Vs. | ) RECOMMENDATION |
| | ) |
| SYNTHRON, INC.; and FRANK DALE, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** is before the court upon defendant Synthron, Inc.'s Motion for Summary Judgment.[1] Having considered defendant Synthron, Inc.'s (hereinafter "Synthron") motion, plaintiff's response, and Synthron's reply and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

### FINDINGS AND CONCLUSIONS

**I. Background**

In this action, plaintiff contends that his discharge by his employer, defendant Synthron, Inc., ("Synthron") was improperly motivated by his age in violation of the Age Discrimination in Employment Act ("ADEA"), and race and nationality, in violation of the

---

[1] The undersigned notes that defendant Frank Dale has not joined in such motion, has not filed a motion for summary judgment of his own, and has not filed an answer to the Complaint within the time allowed by the court. On the other hand, plaintiff has not filed a motion for entry of default.

1

Civil Rights Act of 1964 ("Title VII").  Plaintiff also asserts that Dale, a co-worker, committed the tort of battery. Synthron contends that both plaintiff and Dale were terminated for fighting at the workplace.

For purposes of the pending motion, there appears to be no dispute as to the following facts.  Plaintiff was born in 1930, and is presently 75 years old, and was 73 years old when his employment was terminated.  Kim Depo., at 8:22.  Plaintiff was born in what is now North Korea, and is of Asian ethnicity. Id., at 11:12-15.  In 1976, plaintiff was employed by Robert Moor, president of Synthron, as a chemist.  Kim Depo., at 19:13-22:5.  After 27 years of employment at Synthron, plaintiff was discharged in November 2003 for engaging in workplace violence.

During those years of employment, plaintiff either worked alone or with other chemists in a building separate from other workers. Id., at 77:18-22.  It is undisputed that plaintiff had trouble getting along with other employees, Bowers Aff., at ¶ 6, 8, Miller Aff., at 4, and threatened to "bust" the head of a fellow employee, which resulted in charges of "communicating threats" being lodged against plaintiff. Kim Depo., at 69-79; Kim Aff., at ¶¶ 17-18.

On a date prior to October 2003,[2] plaintiff cursed at another employee, defendant Frank Dale. Bowers Aff., at ¶ 10; Miller Aff., at ¶ 8.  Plaintiff called Dale a "goddamn son-

---

[2] There is a factual dispute between the parties as to the actual date such verbal altercation occurred.

of-a-bitch" in a confrontation that bordered on becoming physical between the two employees. Bowers Aff., at ¶ 10. At that point Peter Bowers, vice-president of Synthron, memorialized this incident and his response in the following notes, which were made soon after he contends he counseled the employees:

> Frank Dale informed me that Sang Kim had called him a "GDSOB." This meant "God Damn Son of a Bitch," which does not mean a great deal to me but means a serious statement in Morganton, NC. This evidently came about over a conflict in the laboratory area, where Sang confronted Frank and they both nearly came to a physical confrontation. This happened while I was away traveling from the office.
>
> Upon my return I sat down both with Sang Kim and Frank Dale separately and warned them that this type of conduct is unacceptable and if it continued stronger action will be taken or even termination of employment . . . . There has been a history of conflict between these two employees and we need to keep a careful watch of them, for the safety of the other employees.

Bowers Aff., Ex. A.

Later that same year on October 30, 2003, plaintiff called Bowers and left a message indicating that there had been an incident earlier that day at Synthron. Id., at ¶ 12. Twenty minutes later, plaintiff again called Bowers stating that Dale had grabbed him by the throat. Id. Bowers informed plaintiff that he would investigate, and asked plaintiff to stay home the next day. Id. The next day, Bowers confronted Dale at work, who denied choking plaintiff. Id., at ¶ 14. Bowers then ordered Dale to stay at home until further notice. Id.

At that point, Bowers asked plaintiff to meet him at a local health center. Id., at 15. Bowers and plaintiff met at the center, and a physician examined plaintiff's neck for injury, and the physician informed Bowers that no bruising could be found on plaintiff's throat. Id.

Bowers again prepared notes that summarize his understanding of what happened on October 30, 2003. Bowers Aff., Ex. B.

After this incident, Bowers conferred with the human resources director JoAnn Miller and Robert Moor, who is referred to as the "owner" of Synthron, Inc., and the person who had hired plaintiff is 1976. According to Bowers, Moor made the ultimate decision to terminate plaintiff based on workplace violence, an abrasive attitude, angry outbursts, inappropriate language, and prior verbal altercation and threats. Bowers Aff., at ¶¶ 19, 21; Miller Aff., at ¶¶ 10, 12. Both Bowers and Miller averred that neither plaintiff's race nor age was a consideration. Id. Simultaneous with the termination of plaintiff's employment, Synthron also terminated the employment of Dale also for workplace violence. Bowers Aff., at 20. Dale is 26 years younger than plaintiff and is of Caucasian ethnicity. Id.

## II. Standard Applicable to Synthron's Motion for Summary Judgment

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)

(citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a

matter of law." Id., at 252.

III. Discussion

   A.   **ADEA Claim: Dismissal for Lack of Subject Matter Jurisdiction**

For this court to have subject matter jurisdiction over an ADEA claim, plaintiff must have been employed by a company subject to the requirements of the Act at the time of the alleged wrongful conduct. Woodard v. Virginia Bd. of Bar Examiners, 598 F.2d 1345, 1346 (4th Cir.1979). While plaintiff is well within the protected age group, it does not appear that Synthron was subject to the ADEA inasmuch as it did not have the requisite number of employees within the relevant time period.

For alleged age discrimination in employment to be actionable, plaintiff has the jurisdictional burden of proving that his employer had at least 20 employees for each working day in "each of twenty or more calendar weeks" between January 1, 2002, and December 31, 2003,which are the calendar year in which the alleged discrimination occurred and the calendar year immediately preceding that year. 29 U.S.C. § 630(b). Beyond plaintiff's unsupported testimony and argument, he has presented no evidence that Synthron had the requisite number of employees. On the other hand, Synthron has presented the affidavits of its human resources director and vice president, which show the employment of a maximum of 18 employees by Synthron during the requisite period of time. Miller Aff., at ¶¶ 17-19; Bowers Aff., at ¶ 25.

In response, plaintiff has averred that "[a]t all their facilities combined, Synthron did

have more than 20 employees in 2002 and 2003." Kim Aff., at ¶ 36. This information is contradicted by the EEOC charge of discrimination document completed by the plaintiff, in which the plaintiff alleged that Synthron had **16 employees**. See Synthron's Reply, Ex. A. He argues in his brief, without citation to any supporting documentation, that Synthron has "multiple locations throughout the United States . . . ." Plaintiff's Response, at 6. Plaintiff's new allegation would be barred through judicial estoppel. In <u>King v. Herbert J. Thomas Mem. Hosp.</u>, 159 F.3d 192 (4th Cir. 1998), the appellate court held that

> Judicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system. Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefiting itself by maintaining mutually inconsistent positions regarding a particular situation. As we have previously observed, the doctrine is invoked to prevent a party from "playing fast and loose with the courts," from "blowing hot and cold as the occasion demands," or from attempting "to mislead the [courts] to gain unfair advantage." As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances.

<u>Id.</u>, at 196 (citations omitted). Because the law assumes "that there is only one truth about a given set of circumstances," <u>id.</u>, the Court of Appeals for the Fourth Circuit has adopted the doctrines of judicial estoppel and quasi estoppel (which would be herein applicable) to prevent litigants from benefiting from inconsistent factual positions, which not only make a mockery out of the courts, but would put in jeopardy the full faith and credit afforded to earlier decisions. Plaintiff's unsupported statements and arguments do not satisfy his burden

7

of proving that this court has jurisdiction over the subject matter of this particular claim.

In reply, Synthron, a North Carolina corporation, has averred that it has but one location, and that is in Morganton, North Carolina. Bowers Reply Aff., at ¶ ¶ 3, 4.[3] According to Synthron, the "other locations" to which plaintiff refers are "sister subsidiaries" of Synthron's parent corporations, *Manufacture de Produits Chemiques Protex, S.A.,* and, *Gefiprox, S.A.R.L.*, which are French Corporations.

The fewer-than-twenty employee rule implemented by Congress in the ADEA is clearly designed to protect small businesses from mastering federal employment discrimination law. Such a jurisdictional minimum is not unique to the ADEA, and similar provisions are found in 42, United States Code, Section 2000e(b) (Title VII of Civil Rights Act of 1964) (15 employees) and in 42, United States Code, Section 12111(5)(A) (the Americans with Disabilities Act) (15 employees, after 1994). In Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999), Chief Judge Posner explained that

> [t]he purpose is not to encourage or condone discrimination; and Congress must realize that the cumulative effect of discrimination by many small firms could be substantial. The purpose is to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail. This purpose or policy is unaffected by whether the tiny firm is owned by a rich person or a poor one,

---

[3] The undersigned has noted that the Bowers affidavit attached to the reply is signed by Mr. Bowers, but was not notarized. Counsel for Synthron has informed the court that such error will be corrected through an amended filing. Inasmuch as counsel for Synthron is an officer of this court, the undersigned has considered the affidavit of Bowers as if it had already been sworn.

or by individuals or another corporation. If a firm is too small to be able economically to cope with the antidiscrimination laws, the owner will not keep it afloat merely because he is rich; rich people aren't famous for wanting to throw good money after bad.

Id., at 940 (citations omitted).

For purposes of determining whether the jurisdictional threshold is met, separate and distinct corporations can be considered a single employer. If the employees of Synthron's sister subsidiaries are counted, or if the employees of Synthron's French parent corporations are counted, this court would arguably have subject matter jurisdiction over an ADEA claim against Synthron. In Johnson v. Flowers Industries, Inc., 814 F.2d 978, 981 (4th Cir. 1987), the appellate court instructs that the employees of the parent corporation may be counted when the parent corporation hired and fired the employees of the subsidiary, transferred employees between its subsidiaries, and supervised daily operations of the subsidiaries. The Johnson court held that "the parent company can be the employer of a subsidiary's workers if it exercises excessive control . . . ." Id., at 981. In assessing control, relevant evidentiary inquiries include: (1) the interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. Id., at FN*; Baker v. Stuart Broadcasting Co., 560 F.2d 389, 392 (8th Cir.1977). The analysis would be the same when a court considers whether sister subsidiaries should be considered together, as plaintiff's argument suggests. Harris v. Palmetto Tile, Inc., 835 F.Supp. 263, 267 (D.S.C. 1993).

Plaintiff has presented no evidence of the interrelation of operations, centralized

control of labor relations, common management, or common ownership or financial control. While the court has accepted as true plaintiff's averment that he traveled to "other plants from time to time from 1976 to 2003," Kim Aff., at ¶ 36, plaintiff has not presented any evidence that either Synthron's parents or sister subsidiaries control Synthron's operations. The only evidence before this court it that Synthron is a subsidiary of French corporations that have other subsidiaries in the United States, that Synthron had fewer than 20 employees at the relevant time, and that the decision to terminate plaintiff was made by the "owner" of Synthron in Morganton, North Carolina,[4] who was the same person who hired him nearly 30 years earlier. Plaintiff having failed to satisfy his burden of showing subject-matter jurisdiction, the undersigned will recommend that plaintiff's ADEA claim be dismissed for lack of subject matter jurisdiction.

   **B.   ADEA and Title VII Claim: Plaintiff Fails to Establish A Prima Facie Case of Discrimination**

   **1.   Introduction**

In an abundance of caution, the undersigned will consider whether plaintiff has established a prima facie case of employment discrimination under either the ADEA or Title VII. Inasmuch as the shifting burdens test is equally applicable to ADEA and Title VII claims, both claims of discrimination will be considered together.

   **2.   McDonnell Douglas**

---

[4]   It appears that plaintiff failed to take any discovery on this issue.

A plaintiff may prove a claim of age, race, or national origin discrimination by direct evidence of intentional discrimination, or he may prove discriminatory intent through circumstantial evidence by using the indirect method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which has been adapted to ADEA cases.

While plaintiff has argued that he has "direct evidence" of discrimination, he has in reality offered no direct evidence of age, race, or national origin discrimination. The plaintiff has instead offered his opinions. Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Jackson v. Blue Dolphin Communications of N.C., 359 F.Supp.2d 442, 455 (W.D.N.C. 2004). Plaintiff's purported "direct evidence" includes his opinion that Dale assaulted him because of his age, race, and national origin (Plaintiff's Response, at 7, Kim Aff., at ¶ 23), plaintiff's opinion that Synthron excluded him from business trips because of his age, race, and national origin (Plaintiff's Response, at 7, Kim Aff., at ¶ 29), plaintiff's opinion that Synthron had no policy in place to prohibit discriminatory conduct or guide an investigation (Plaintiff's Response, at 7, Kim Aff., at ¶ 34),[5] and plaintiff's opinion that he "was not part of the 'investigation' which led to his termination." Plaintiff's Response, at 7,

---

[5] Plaintiff's averment is internally inconsistent inasmuch as he had annexed to his affidavit Synthron's employee handbook, which, contrary to his affidavit, contains a prohibition of abusive or threatening statements in the workplace, details Synthron's procedures for reporting concerns, and contains Synthron's equal opportunity statement. See Kim Aff., Ex. B.

Kim Aff., at ¶¶ 23, 25.[6]  This is simply not direct evidence: "Only the most blatant remarks, whose intent could be nothing other than to discriminate [] constitute direct evidence of discrimination."  Williams v. PPG Industries, Inc., 2002 WL 32667169, at 4 (M.D.N.C. 2002).  Having no direct evidence of discrimination, the undersigned will consider whether plaintiff can establish his claim with circumstantial evidence using the "3-stage scheme of proof originally formulated for Title VII cases."  Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir. 1988).

This three-stage scheme includes:

(1) plaintiff making out a *prima facie* case of age, race, or national origin discrimination;

(2) if plaintiff satisfies his burden, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions; and

(3) if defendant satisfies its burden, plaintiff must show by a preponderance of the evidence that defendant's legitimate, nondiscriminatory reason was a pretext for unlawful discrimination.

b. *Prima Facie* Case

---

[6] Plaintiff's averment is contrary to the undisputed facts of record, discussed *supra*, that he initiated the investigation by reporting the alleged assault by Dale, that he was provided with an opportunity to write a statement of what occurred, and that he was examined by a doctor for evidence that would have supported his version of the facts.

In the context of a termination of employment, plaintiff must prove four elements to establish a *prima facie* case of age, race, or national origin discrimination:

(1) that he is within the protected class for the relevant law;

(2) that he was performing the duties of his job at level meeting the legitimate expectations of his employer;

(3) that he was fired; and

(4) that a person outside the protected class was thereafter selected for the job in question.

See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir. 1982); Bishop v. Peppertree Resorts, Ltd., 212 F.Supp.2d 518, 522 (W.D.N.C. 2002).

### I. First Element

There is no dispute that plaintiff was within the respective protected classes.

### ii. Second Element

Plaintiff has failed to offer any proof that he was performing his work in a manner that met the legitimate expectations of Synthron, i.e., that he accomplished his work free from violence, angry outbursts, use of abusive language, and verbal threats of a personal nature. In Hill v. North Carolina Dept. of Correction, 1999 WL 1939996, at 5 (E.D.N.C. 1999), the district court discussed how obedience to orders and disciplinary rules are legitimate expectations of employers:

> Defendant DOC, whose mission includes the maintenance of order and discipline among incarcerated criminals, can legitimately expect its own

> employees to respect and follow the directions of their supervisors, especially when in the presence of prisoners. It is well documented, however, that Plaintiff Hill repeatedly displayed flagrant disrespect and insubordination towards his supervisors, sometimes in view of prisoners. Among other things, Hill failed to obey directives given by his supervisor, refused to accept a reasonable and proper assignment from a supervisor, failed to cooperate with staff regarding an internal investigation, and left a post unattended. Therefore, when Hill was discharged by DOC . . . he was not performing his job in a manner that met DOC's legitimate expectations.

Id., at 5 (citations to evidentiary record omitted).

### iii. Third Element

Inasmuch as plaintiff was involuntarily terminated from employment, plaintiff meets the third element.

### iv. Fourth Element

As to the ADEA claim, plaintiff contends that he was replaced by a younger individual. While this is accurate in that such person was 44 years old compared with plaintiff's 73 years, making such person "substantially younger," the person who replaced plaintiff is actually within the protected class of the ADEA. Because the Supreme Court has found that the fourth element is satisfied through a showing that the replacement was substantially younger, and that such measurement is a better indicator of discrimination than protected class membership, plaintiff satisfies the fourth element. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996).

As to his race and nationality claims, plaintiff has shown that he was not replaced by a person of Asian ethnicity from what is now North Korea, rather, he was replaced by a

Caucasian from the United States. Plaintiff has satisfied the fourth element as to his race and national origin claims.

* * *

Plaintiff has satisfied the first, third, and fourth elements of a prima facie case, but has not satisfied the second inasmuch as he has failed to show that he was performing his job in a manner that met the legitimate expectations of his employer. In the context of workplace violence, see State v. Davis, 349 N.C. 1 (1998), an expectation that employees will not engage in violence or engage in conduct that is likely to lead to violence is legitimate inasmuch as employers are now held to task where they fail to take steps to prevent violence to workers. See Pittman v. Twin City Laundry & Cleaners, 61 N.C.App. 468 (1983). Plaintiff, therefore, fails to establish a prima facie case of age, race, or national origin discrimination and the undersigned will recommend that such claims be dismissed with prejudice.

### c. Legitimate, Non-Discriminatory Reason for Termination

Even if plaintiff had set forth a *prima facie* case, Synthron has satisfied its burden of articulating a legitimate, nondiscriminatory reason for its actions. Synthron has articulated a legitimate, nondiscriminatory reason for its termination of plaintiff, namely repeated failure to conform his personal conduct by controlling his temper and behavior in the workplace.

### d. Pretext

Defendant having articulated a legitimate nondiscriminatory reason for discharging

plaintiff, the onus of proof shifts back to plaintiff to prove that he was a victim of intentional age, race, and national origin discrimination. That burden can be satisfied by showing that the reason Synthron has put forward is a mere pretext for discrimination and that the plaintiff's age, race, and national origin is the more likely reason for the termination. Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir. 1988), cert denied, 490 U.S. 1107 (1989).

> The question is not whether [defendant] exercised prudent business judgment . . . but whether [plaintiff] has come forward to refute the articulated, legitimate reasons for his discharge. In this regard, [plaintiff] must do more than challenge the judgment of his superiors through his own self-interested assertions.

Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)(citations omitted), cert. denied, 479 U.S. 1066 (1987). Consistent with the Court of Appeals for the Seventh Circuit, the Fourth Circuit reasoned that what is relevant is not a plaintiff's belief that he was fired because of age, race, or national origin, but "the perception of the decision-maker." Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). See Elliott v. Group Medical & Surgical Service, 714 F.2d 556 (5th Cir. 1983).

On the issue of pretext, plaintiff merely argues that [e]ven if Synthron demonstrated a legitimate reason for termination . . . the inequity of the situation gives further rise to inference of unlawful discrimination." Plaintiff's Response, at 9. Reading this argument in a light most favorable to plaintiff, he contends that this court should find such legitimate

reason for his termination to be mere pretext because he believes the situation is inequitable.[7] In arguing pretext, plaintiff "bears the ultimate burden of proving that he has been the victim of intentional discrimination." Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429 (4th Cir. 2000).

What plaintiff has offered on the issue of pretext is not proof, but merely a hunch or speculation on his part. At best, the speculation and conjecture contained in plaintiff's argument and affidavit raises a mere possibility of discrimination rather than the reasonable probability that is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams, supra, at 241-42. Speculative assertions that a defendant's motivation was discriminatory is not enough to withstand summary judgment. Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988). Conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment, Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir. 1987); and unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985).

Even if plaintiff had presented a *prima facie* case of discrimination, Synthron has presented evidence that he was terminated for violations of its written policy against workplace violence and previous warnings that further conduct would result in his

---

[7] The undersigned finds nothing inequitable in Synthron's termination of plaintiff in this matter inasmuch as plaintiff was terminated simultaneously with a "substantially younger" employee for identical conduct.

termination. Even if the burden had shifted to Synthron, it proffered a nondiscriminatory reason for terminating plaintiff, namely, that plaintiff violated its policy against work-place violence. Plaintiff's proffer, on the other hand, provided no evidence that Synthron's proffered reasons were false and that the real reason for his discharge was discrimination. A rational fact finder simply could not find that Synthron discriminated against plaintiff on the basis of age, race, or national origin.

    **C.**    **Supplemental State Law Claim for Breach of Contract**

Plaintiff claims that Synthron breached its employment contract with him by failing to provide him with 90 days severance pay. Complaint, at ¶ 26. It is hornbook law that "willful or wanton misconduct of an employee constitutes a ground for immediate dismissal without notice," Williston on Contracts § 54:43, and that in North Carolina a term is implied in every employment contract that the employee will obey the reasonable work rules and instructions of his employer. Smith v. State, 298 N.C. 115, 129 (1979). Where an employee violates those rules and instructions, just cause exists for the employee's dismissal irregardless of the terms of the employment contract. Id. The undersigned will recommend that plaintiff's supplemental contract claim against Synthron be dismissed with prejudice.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant Synthron, Inc.'s Motion for Summary Judgment be **GRANTED** for the reasons discussed

above, and that all claims asserted against Synthron, Inc., be dismissed with prejudice.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within fourteen (14) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

**Signed: July 19, 2005**

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge